**NATIONAL SEMICONDUCTOR CORP., Plaintiff,**

v.

**RAMTRON INTERNATIONAL CORP., Defendant.**

**Civil Action No. 03–61 (RWR/JMF).**

United States District Court, District of Columbia.

June 5, 2003.

Charles Lewis Gholz, William T. Enos, Michael R. Casey, Andrew M. Ollis, Oblon, Spivak, McClelland, Maier & Neustadt, Alexandria, VA, for Plaintiff.

Michael Dana Warden, Achiezer Guggenheim, Sidley Austin Brown & Wood, Washington, DC, for Defendant.

## MEMORANDUM OPINION

FACCIOLA, United States Magistrate Judge.

This case has been referred to me by Judge Roberts pursuant to LCvR 72.2(a) for the resolution of all discovery disputes. Currently pending before me are: *National Semiconductor's Motion for Protective Order & Pre–Trial Ruling to Limit Discovery* (99–146[1]); *Ramtron's Motion to Compel Complete And Substantive Responses To Its First Set Of Interrogatories And Its First Set Of Requests To Admit* (99–146) and *Ramtron's Second Motion to Compel Complete And Substantive Responses, Discovery Requests, And Related Depositions* (03–61). For the reasons stated in this Memorandum Opinion, these motions are granted in part and denied in part.

## BACKGROUND

Ramtron International Corporation ("Ramtron") filed this 35 U.S.C. § 146[2] proceeding to seek a reversal of the Board of Patent Appeals and Interferences' ("Board") final decisions awarding priority of invention to National Semiconductor Corporation ("NSC"). These proceedings were interference proceedings said by NSC to be "process[es] to determine who was the first to invent an invention de-

---

1. Civil Action Nos. 99–146 and 02–2456 have been consolidated with this action, 03–61.

2. All references to the United States Code are to the electronic versions that appear in Westlaw or Lexis

scribed in a patent and/or patent application involving two or more parties claiming inventorship." *Motion of Defendant National Semiconductor Corporation for Protective Order and Pre–Trial Ruling to Limit Discovery Regarding the Scope of the 35 U.S.C. Section 146 Proceeding* at 1 ("NSC Motion"). Ramtron claims priority under a man named Eaton and NSC claims priority under a man named Evans.

## The Discovery at Issue

There are two sets of discovery responses at issue, the discovery propounded in case number 02–2456 and the discovery propounded in 99–146. In 02–2456 Ramtron propounded 115 Requests to Admit and 13 Interrogatories. In case number 99–146, Ramtron propounded 20 Requests to Admit and 12 Interrogatories.

NSC objects to many of these requests for generic and specific reasons. By "generic," I mean that a particular objection is asserted to more than one of Ramtron's demands. I will deal with them first and then turn to the more specific objections that NSC makes to certain interrogatories in addition to its generic objections. Before I do, I must deal with whether the Court should require any greater response where NSC has provided a qualified response to the Requests to Admit.

## Requests to Admit

NSC neither admitted nor denied some of Ramtron's Requests to Admit and gave qualified denials or admissions to the rest. The difference in the nature of NSC's responses has different consequences for the additional judicial action Ramtron seeks.

The Federal Rules of Civil Procedure permit the following responses to such a request: (1) an objection on the grounds that the matter demanded to be admitted is beyond the scope of discovery permitted by Fed.R.Civ.P.26 (b)(1), i.e., the admission sought will yield neither admissible evidence nor information that "appears reasonably calculated to lead to the discovery of admissible evidence;" (2) an admission; (3) a denial; (4) a detailed explanation why the matter can be neither admitted nor denied; or (5) a good faith qualified admission that admits certain matters, if possible, but denies or gives a qualified answer to the rest. Fed.R.Civ.P. 36(a).

The Rule further provides:

The party who requested the admissions may move to determine the sufficiency of the answers or objections. Unless the court determines that an objection is justified, it shall order that an answer be served. If the court determines that an answer does not comply with the requirements of the rule, it may order that the matter is admitted or that an amended answer be served.

Fed.R.Civ.P. 36(a).

There is, however, another grant of authority that has to be considered for an asserted deficiency in responding to a Request to Admit. Fed.R.Civ.P. 37(c)(2) provides:

If a party fails to admit the genuineness of any document or the truth of any matter as requested under Rule 36, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, the requesting party may apply to the court for an order requiring the other party to pay the reasonable expenses incurred in making that proof, including reasonable attorney fees. The court shall make the order unless it finds that (A) the request was held objectionable pursuant to Rule 36(a), or (B) the admission sought was of no substantial importance, or (C) the party failing to admit had reasonable ground to believe that the party might prevail on the matter, or (D) there was

other good reason for the failure to admit.

FED.R.CIV.P. 37(c)(2).

The two Rules, read together, suggest the proper disposition of any objection based on anything other than an admission or denial. First, that the matter to be admitted is neither admissible nor likely to lead to admissible evidence is legitimate grounds for objection, but the court may overrule that objection and order an answer. · Second, if the party does not provide any of the responses permitted by the Rule, i.e., a denial, an admission, a qualified admission, or a truthful explanation why it can neither admit nor deny the Request, the court may require the party to do so.

But, if the answering party has either indicated that it can neither admit nor deny the requested admission or has provided a qualified answer, the appropriate judicial response is much less clear. The premise of any motion to compel would have to be a lack of good faith in making such a response. Requests to Admit are not a discovery device, however. *Lakehead Pipe Line Co. Inc., v. American Home Assurance Co.*, 177 F.R.D. 454, 458 (D.Minn.1997). They are designed to narrow the issues for trial. Given their purpose, the federal courts express their concern when they breed additional litigation because one party is dissatisfied with the answer of the other. In *Foretich v, Chung*, 151 F.R.D. 3 (D.D.C.1993), for example, a defendant in a defamation case demanded that the plaintiff admit that he was a public figure. When he denied that he was, the other party insisted that the court examine the truthfulness and legitimacy of his denial. The court, however, declined the invitation, explaining that "there is simply no provision of the Feder-

al Rules allowing a party to litigate a denied request for an admission at this stage of the proceedings." *Id.* at 5.[3]

■ When one party questions the truthfulness, *bona fides,* or legal legitimacy of a qualified denial or admission, the court is confronted with the obligation to resolve the question presented. That encourages more litigation, the converse of the purpose behind permitting one party to demand the other to admit the truth of a certain statement. One is hard pressed to understand why the Federal Rules of Civil Procedure should be interpreted to reach such a perverse result. A much more natural reading of the Rules permits the party responding to a request to admit to, as it were, roll the dice and to deny all such requests, running the risk that if his opponent proves all those facts he will have to pay for it, unless he can escape under the auspices of Fed.R.Civ.P. 37(c)(2). There is nothing in any of the Rules, including Rule 11, that condemns such a practice. In fact, if a request for admission is viewed as nothing more than what it is, a request that a certain fact be stipulated, then it has to be conceded that the common law has never required one party to stipulate to any fact. While the Federal Rules modify that by forcing one party to pay when she refuses to stipulate and her opponent is put to her proof, they certainly cannot be construed as requiring a court to examine into the reason why a party will not stipulate. If that is so, then, *a fortiori,* a qualified denial or admission cannot require a court to inquire into the *bona fides* of the person uttering it. The cost shifting remedy provided by Fed. R. Civ. 37(c)(2) suffices. Hence, the validity, or *bona fides*, of a qualified answer to a request for admission must await the trial

**3.** Accord: *United States v. Operation Rescue Nat'l,* 111 F.Supp.2d 948, 968 (S.D.Ohio 1999); *Lakehead Pipe Line Co. Inc.,* 177 F.R.D. at 457–458.

to see if the party forced to prove what was not admitted can meet the requirements of that rule. *Doe v. Mercy Hospital Corp.,* 1993 WL 377064 at *14 (E.D.Pa. Sept. 13, 1993)("[T]he remedy for an insufficient or inaccurate response to a Request for Admission lives exclusively within Rule 37(c)."). As a result, I will not compel any further response by NSC where it has provided a qualified denial or admission to a Request for Admission. *See Lakehead Pipe Line Co.,* 177 F.R.D. at 457 (qualified responses to Request for Admissions expressly approved).

I now turn to those Requests to Admit that NSC neither admitted nor denied.

### Post-application Testing

 NSC admitted (with qualifications) that it did not test a "nonvolatile ferroelectric memory to see if KNO3 would work as the ferroelectric component of the nonvolatile memory" defined by claims 6, 8, 9, 10, 11 and 12 of U.S. Patent No. 4,873,664, but balked at providing that information with reference to the same kind of testing after November 15, 1991. NSC argues that, since the filing date was February 12, 1987, tests conducted after that date are irrelevant. But, since all the Requests to Admit are premised on the same test, the results would be the same whenever the tests were conducted. If the test established that the application did or did not meet the enablement standard, the result of the test would be relevant to the enablement issue since the test and the information in the application, said to be enabling, remain a constant. This situation is entirely different from the situation to which NSC compares it where the inventor attempted to rely on information that came into existence after the application. *E.g. In re: Wright,* 999 F.2d 1557, 1563 n. 8 (Fed.Cir.1993). I will, therefore, order NSC to respond to Requests to Admit Nos. 50–74 in 99–146.

### Issues Not Resolved by the Board

I now turn to the interrogatories and to the resolution of what I have called NSC's generic objections. I begin with NSC's fundamental claim that it cannot be required to answer any interrogatories as to issues that the Board did not actually resolve.

As is often true of administrative and judicial proceedings, the Board resolved the case without ruling on all of the contentions made by the parties. A proceeding under 35 U.S.C. § 146 is said to be hybrid in nature, having the characteristics of a proceeding *de novo* and an appeal. *Estee Lauder Inc. v. L'Oreal, S.A.,* 129 F.3d 588, 592 (Fed.Cir.1997). Thus, the question immediately arises whether the district court should consider and resolve contentions made by the parties that were not resolved by the Board.

Ramtron asked Judge Roberts to decline to consider any issue raised by NSC that was not previously resolved by the Board. It identified those issues as (1) Eaton's deriving his invention from another inventor; (2) his engaging in inequitable conduct in the prosecution of an application for a patent; and (3) his application for a patent did not "comply with the enablement and best mode requirements of 35 U.S.C. § 112." *Ramtron's Combined Motion to Preclude Consideration of Certain Issues and Memorandum of Points and Authorities in Support Thereof* at 2. Ramtron, freely conceding that this Court could reach any of these issues, whether or not the Board had reached them, nevertheless argued that, in the event that Judge Roberts reversed the Board's actual holding, the wiser course was for him to remand the case to the Board in order to secure the benefit of its expertise on those issues that were asserted, but not resolved by the Board when it first considered the

case. NSC resisted the motion, insisting that Judge Roberts resolve all issues that were before the Board whether or not the Board actually resolved them.

Judge Roberts followed NSC's suggestion and stated:

> If the Court affirms the Board on the issues it reached, there will be no reason for the Court to reach the issues the Board did not decide. If, however, the Court were to reverse the Board on the issues it decided and to remand the undecided issues to the Board, it is likely that the party who is dissatisfied with the Board's decision on those issues would appeal the decision to this court. It is more efficient for the court to decide in this case all issues that are necessary to its review of the Board's decision.

*Order of March 20, 2003.*

In a footnote, Judge Roberts identified the following issues that were "raised and developed" before the Board, but not decided:

> The issues are (1) whether Eaton derived the subject invention from another; (2) whether Eaton engaged in inequitable conduct in the prosecution of the subject patent; and (3) whether Eaton's patent application failed to comply with the enablement and best mode requirements of 35 U.S.C. § 112.

*Id.* at 1 n. 1.

Interestingly, before Judge Roberts ruled, NSC had resisted Ramtron's efforts to secure discovery on the grounds that Ramtron was seeking discovery as to issues that NSC had not properly raised before the Board. NSC simultaneously resisted, however, Ramtron's efforts to limit the proceeding in this Court to issues actually decided by the Board. Hence, NSC's position has to be that Judge Roberts can consider any issue

raised before the Board, but that discovery has to be limited to those issues. NSC could not possibly take any other position. Judge Roberts has now specifically indicated the issues he will consider in addition to those decided by the Board. It has to follow, therefore, that discovery must be permitted as to all those issues that Judge Roberts has "put in play." By definition, discovery may be had as to any matter that is relevant to the claim or defense of any party and the issues denominated by Judge Roberts as those he will consider unquestionably constitute claims or defenses of a party. It would be, after all, illogical to deny discovery as to those issues Judge Roberts has identified as legitimate. There has to be a coincidence between those issues and the discovery permitted lest the discovery not deal with issues that will unquestionably be tried.

Thus, the first question presented is whether the discovery sought is reasonably calculated to lead to the discovery of evidence that will be admissible on the issues Judge Roberts has identified. FED. R.CIV.P. 26(b)(1).

### Enablement

■ 35 U.S.C. § 112 specifies the requirements of the "specification" that must accompany a patent application as follows:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise and exact terms as to enable any person skilled in the art to which it pertains . . . to make and use the same.

I ordered Ramtron to produce the actual portions of the record before the Board that supported its claim that the issue of enablement, and the other issues NSC insisted were never raised before the Board, were, in fact, raised. Ramtron complied with this order and points me to a section

of Senior Party Eaton's Brief for Final Hearing (Volume III).

In this section of the Brief, Ramtron, standing in Eaton's shoes, spoke to Evans' charge that Eaton did not comply with § 112 because Eaton had not disclosed in his application everything Eaton should have. Ramtron argued that Evans did not disclose what Evans claimed Eaton did not disclose. Citing cases that stand for the proposition that a party whose disclosure is no better than his adversary's is in no position to attack the validity of his adversary's disclosure, Ramtron sought the dismissal of Evans' argument that Eaton had violated § 112. *Senior Party Eaton's Brief for Final Hearing* (Volume III) at Bates Number 15807–15808. Thus, NSC makes an argument that Eaton had not provided sufficient information to permit the enablement of his invention and Ramtron responded that Evans had provided no greater information than Eaton did when Evans applied for the patent. Thus, the completeness of Evans' application bears directly on the validity of Eaton's patent and fits perfectly within one of the issues defined by Judge Roberts: whether Eaton's patent application failed to comply with the enablement and best mode requirements of 35 U.S.C. § 112. The discovery of what Evans did or did not disclose in his patent application is, therefore, legitimate and will be permitted. Specifically, NSC must answer Interrogatory No. 4 in 99–146 and Interrogatory No. 6 in 02–2456.

### Inequitable Conduct

■ There is a principle of patent law that the withholding of information from the Patent Office can constitute inequitable conduct that might require the invalidation of a patent when the information subsequently comes to light. As already explained, Judge Roberts has specifically indicated that Evans' claim that Eaton en-gaged in such inequitable conduct, is an issue he will consider, whether or not the Board considered it. There is no question that NSC, claiming under Evans, has asserted that Eaton failed to make a certain disclosure. The dispute between the parties is as to the controlling legal standard. Ramtron, claiming under Eaton, insists that the information alleged to have not been disclosed must be material "that is, if the reference may influence an examiner's decision to allow or reject the claim. The reference would be material, for example, if they disclosed or made obvious the claimed invention." *Ramtron's Motion to Compel Complete and Substantive Responses to its First Set of Interrogatories and its First Set of Request to Admit* at 4.

NSC, however, quarrels with Ramtron's assertion as to the meaning of the materiality of the information claimed not to have been disclosed. According to NSC, it does not have to show that the information would have disclosed or made obvious the claimed invention. It need only show a substantial likelihood that a reasonable patent examiner would consider the information important in deciding whether to allow the application to issue a patent, whether or not it disclosed or rendered the claimed invention obvious. *National Semiconductor Corporation's Response to Ramtron's Motion to Compel* at 6.

But, Ramtron apparently intends to argue that an examiner would consider the undisclosed matter important if it disclosed or rendered obvious the claimed invention. *See Ramtron's Reply in Support of Its (1) Second Motion to Compel Complete and Substantive Responses to Discovery Requests and Related Deposition and (2) Request for Oral Argument* at 10. There is no reason that I can see that would require the rejection of that argument now. Therefore, the information sought easily fits within the definition of being

reasonably likely to yield admissible evidence. FED.R.CIV.P. 26(b).

I will, therefore, require NSC to answer Interrogatories Nos. 9–12 in both cases (02–2456 & 99–146) in the same manner by indicating what paper or disclosure made by Schwee before February 12, 1987, discloses information that a reasonable patent examiner would find either disclosed or rendered obvious the patents applied for in Interference Nos. 102,723, 102,724 and 102,727.

### Subject Matter At Issue

■ Although this case is in its eleventh year of litigation, NSC insists that a phrase that appears in many of Ramtron's discovery requests, "the subject matter defined" by a particular count of a particular interference is vague. But, research into the decisions of the Federal Circuit indicates that this phrase is commonly used to denote the scientific explanation for the matter invented that is the subject of the interference claimed. *E.g., Credle v. Bond*, 25 F.3d 1566 (Fed.Cir.1994) ("William S. Credle, Jr. and Debra Boone Overman (Boone) appeal from the reconsideration decision of the U.S. Patent & Trademark Office (PTO) Board of Patent Appeals & Interferences (Board) awarding priority of invention of the subject matter defined by the interference count to Curtis J. Bond."); *In re: Deckler*, 977 F.2d 1449, 1452 (Fed.Cir.1992)("The interference judgment conclusively determined that, as between Deckler and Grataloup, Grataloup was entitled to claim the patentable subject matter defined in the interference count."); *Nitz v. Ehrenreich*, 537 F.2d 539, 543 (Cust. & Pat.App.1976)("The existence of common subject matter defined by the interference count is a prerequisite for an award of priority, i.e., the existence or nonexistence of interfering subject matter goes to the very foundation on which an interference rests.").

Additionally, in this case, the Board of Patent Appeals and Interferences began each of its final decisions by stating: "The subject matter in issue is defined by the following single count." That sentence was then followed by a detailed scientific explanation of the matter invented.

I will, therefore, define the words "subject matter defined" by a particular count of a particular interference to mean the definition of what the Board called "the subject matter in issue" in each of its final decisions. The objection of NSC to the vagueness of the term "subject matter defined" by a particular count of a particular interference is overruled and NSC will have to answer the interrogatories in which that phrase appears despite its objection to it.

### Privilege Claims and Matters Briefed Before the Board

■ Ramtron has propounded interrogatories that seek to discover NSC's position as to various issues. For example, in Interrogatory No. 2 in 99–146, Ramtron wants to know all the reasons for NSC's belief that the patents at issue are unenforceable. In Interrogatory No. 5, Ramtron wants to know the reasons why NSC believes that the patents at issue were reduced to practice before February 12, 1987. Finally, in Interrogatory No. 8, Ramtron asks NSC to "identify, on an interference-by-interference basis," each inventor of the patents at issue, stating its reasons for this identification and the subject matter conceived of by each such inventor.

NSC takes a similar approach to each of these interrogatories. It objects on the grounds of the attorney-client privileges and insists that the question speaks to an issue or matter that was fully briefed when the case was before the Board. It then reasons that, since Ramtron can find the

information it wants in the record, guided by the table of contents in the briefs, it should not be required to provide the answer sought.

First, under Fed.R.Civ.P. 26(b)(5), I cannot consider any claim of privilege unless the information required to be set out by that rule is provided by the party claiming the privilege. It certainly is not provided here by the mere invocation of the privilege. Additionally, I am hard pressed to understand how a party setting forth its legal position as to an issue presented either discloses what a client told an attorney in confidence for the purpose of seeking legal advice or legal representation or would require the production of documents "prepared in anticipation of litigation or for trial" by that party or that party's representative. FED.R.CIV.P. 26(b)(3).

Second, this case is in its eleventh year of active litigation and a gigantic record has accumulated. I am afraid that this is the problem and not the solution. To refer one's opponent to the record before the Board, even aided by a table of contents, creates the risk that one's opponent may guess wrong as to his opponent's contentions. By the same token, there is no reason to reinvent the wheel if NSC can specifically identify where in the record the contentions sought by the interrogatory appear with the understanding that NSC will not be permitted to make any other contention.

As I have noted, Ramtron has provided me with several notebooks that collect all the documents that pertain to the various issues before the Board. Each volume contains an index that identifies by Bates number the pages of the documents where each issue is addressed. I am not certain whether Ramtron made a copy of these notebooks available to NSC. If it has not, NSC may retrieve from my chambers the copy Ramtron gave me.

NSC may then proceed in either of two fashions. It can either answer Interrogatories 2, 5 and 8 in 99–146 and Interrogatories Nos. 2 and 8–13 of 02–2456 completely without reference to the record below or it can use the indexes to the notebooks provided by Ramtron and identify by document and Bates number those pages of the record before the Board in which its answer to the interrogatory is set out. In either instance, NSC will not be permitted to advance any contention that it did not identify in response to these interrogatories.

Finally, I turn to specific objections NSC has made to certain interrogatories.

### Interrogatory No. 6 in 99–146

35 U.S.C. § 103(a) provides, in pertinent part, that:

A patent may not be obtained ... if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

Interrogatory No. 6 asks NSC to state the level of ordinary skill in the art for each of the interferences at issue. After an initial objection, NSC produced its expert reports that set forth their opinion of "the level of one of ordinary skill in the art." *NSC's Response to Ramtron's Motion to Compel* at 10. Ramtron is still not satisfied, protesting that the interrogatory was directed to NSC, not its experts and that NSC's response speaks to a "person of skill" while the interrogatory is directed to information concerning a person of ordinary skill.

But, NSC, by hiring these experts and tendering their reports as evidence, has to be deemed to be adopting their reports as its contentions. It is unnecessary to re-

quire NSC to so state that self-evident proposition.

Furthermore, neither NSC's supplemental answer nor the expert reports have been made available to me so I cannot assess the accuracy of the rarefied distinction Ramtron draws. I find it hard to understand why anyone would hire experts and have them prepare reports premised on a general or generic standard (expertise of a person of skill) rather than the correct legal standard (person of ordinary skill). In the absence of showing that NSC's experts devoted their reports to a non-issue, I will not require any additional response.

### Interrogatory No. 7 in 99–146

Ramtron demands that NSC indicate whether each count of the underlying four interferences is not patentably distinct from the other counts in all of the interferences. NSC describes the request as absurd, pointing out that the United States Patent and Trademark Office has held that the counts are "by definition patentably distinct." *NSC's Response to Ramtron's Motion to Compel* at 11. Ramtron fears, however, that NSC may change its mind and argue that the counts are not distinct to gain an advantage. *Ramtron's Reply to NSC's Response to Ramtron's Motion to Compel* at 7. While it is nice to wear a belt and suspenders, it is not necessary. NSC's concession that the counts are patentably distinct will bind it. I will not order any greater response with the understanding that NSC may never argue that the counts are not patentably distinct.

### Interrogatory No. 4 in 02–2456

NSC's response to this interrogatory has engendered a controversy about the taking of a deposition of a man named Kinney. But, discovery has ended and Judge Roberts has ordered the parties to file within seven days of the issuance of this memorandum a "joint statement pro-

posing deadlines to be included in a *firm* scheduling order to govern the remainder of this case." *Order of October 11, 2002.* Whether there will be any additional depositions is entirely up to Judge Roberts.

### CONCLUSION

An Order accompanies this Memorandum Opinion.

### ORDER

In accordance with the accompanying Memorandum Opinion, it is, hereby,

**ORDERED** that *National Semiconductor's Motion for Protective Order & Pre-Trial Ruling to Limit Discovery* in civil action 99–146[# 39]; *Ramtron's Motion to Compel Complete And Substantive Responses To Its First Set Of Interrogatories And Its First Set Of Requests To Admit* in civil action 99–146[# 46] and *Ramtron's Second Motion to Compel Complete And Substantive Responses, Discovery Requests, And Related Depositions* in civil action 03–61[# 17] are all **GRANTED** in part and **DENIED** in part. It is further, hereby,

**ORDERED** that NSC shall respond to Ramtron's Requests to Admit Nos. 50–74 in civil action 99–146, regarding the post-application testing and whether it met the enablement standard. It is further, hereby,

**ORDERED** that NSC shall answer Interrogatory No. 4 in civil action 99–146 and Interrogatory No. 6 in civil action 02–2456, regarding whether Evans made proper disclosures in his patent application. It is further, hereby,

**ORDERED** that NSC shall answer Interrogatories Nos. 9–12 in both civil actions 99–146 and 02–2456 by indicating what disclosure Schwee made before February 12, 1987, which may disclose infor-

mation that a reasonable patent examiner would find either disclosed or rendered obvious the patents applied for in Interference Nos. 102, 723, 102,724 and 102,727. It is further, hereby,

**ORDERED** that NSC's objection to the phrase, "subject matter defined," in Ramtron's discovery requests is overruled. In accordance with my Memorandum Opinion, the definition set forth by the Board controls. It is further, hereby,

**ORDERED** that NSC may either answer Interrogatories Nos. 2, 5, and 8 in civil action 99–146 and Interrogatories Nos. 2 and 8–13 in civil action 02–2456 completely without reference to the record from the Board or it may use the indexes provided by Ramtron and identify by document and Bates number those pages of the record from the Board in which it answers the interrogatories.

**SO ORDERED.**