This decision is a precedent of the Trademark Trial and Appeal Board.

**UNITED STATES PATENT AND TRADEMARK OFFICE**
P.O. Box 1451
Alexandria, VA  22313-1451

Baxley

Mailed:  June 6, 2007

Opposition No. **91152940**

Sinclair Oil Corporation

v.

Sumatra Kendrick

Before Quinn, Rogers and Cataldo,
Administrative Trademark Judges

By the Board:

Sumatra Kendrick ("applicant") has applied to register

the mark STAACHI'S CO. 1996 and design in the following form

**STaaCHi'S Co. 1996**

for "retail store services featuring, bath products, gift

products, [and] candy products" in International Class 35.[1]

Sinclair Oil Corporation ("opposer") filed a notice of

opposition to registration of applicant's mark on grounds of

likelihood of confusion with a series of previously used and

registered marks, including the following design

---

[1] Application Serial No. 76212011, filed February 20, 2001, based
on an assertion of use in commerce under Trademark Act Section
1(a), 15 U.S.C. Section 1051(a).  The application alleges March
1996 as the date of first use anywhere and March 20, 1996 as the
date of first use in commerce and includes a disclaimer of "CO.
1996."



for services in International Classes 35 and 41, including "retail apparel and gift store services."[2]  On January 31, 2006, the Board granted opposer's motion for leave to file an amended notice of opposition by which opposer added claims of nonuse and fraud based on its assertion that applicant falsely claimed to be using the mark in commerce in connection with the identified services in the involved application.

On March 1, 2006, opposer filed a motion for summary judgment on its newly pleaded grounds of nonuse and fraud. Applicant incorporated a motion to amend the filing basis of the involved application to Trademark Act Section 1(b), 15 U.S.C. Section 1051(b), into her response to opposer's motion.[3]  Opposer has filed a brief in response to the motion to amend.

---

[2] Registration No. 929749, issued February 22, 1972, renewed twice.

[3] Applicant did not separately caption her motion to amend the filing basis of her application.  Although there is no prohibition on incorporating a motion into a brief in response to a motion, the better practice is either to file such motion as a separate submission or, at a minimum, to caption separately any such motion.

We turn first to applicant's motion to amend the filing basis of the involved application to Section 1(b). An applicant under Trademark Act Section 1(a), 15 U.S.C. Section 1051(a), who is a defendant in a Board opposition proceeding, can move to amend its application to substitute Section 1(b) as its filing basis and maintain its original filing date, provided that it meets all the requirements for a Section 1(b) filing basis. See Trademark Law Treaty Implementation Act of 1998 (TLTIA), Pub. L. No. 105-330, 112 Stat. 3064 (15 U.S.C. Section 1051), and the "Trademark Law Treaty Implementation Act Changes" to the Rules of Practice and Procedure, published in the Federal Register at 64 FR 48900 (Sept. 8, 1999) and in the Official Gazette at 1226 TMOG 103 (Sept. 28, 1999). See also Trademark Rules 2.34, 2.35 and 2.133(a) and Trademark Exam Guide No. 3-99 at 6.[4] When an applicant substitutes one basis for another, the Office will presume that there was a continuing valid basis, unless there is contradictory evidence in the record, and the application will retain the original filing date. See Trademark Rule 2.35(c).

In an application under Section 1(b), an applicant must verify that it has a *bona fide* intent to use the mark in commerce on or in connection with the goods or services

---

[4] Exam Guide No. 3-99 is available on the USPTO web site at http://www.uspto.gov/web/offices/tac/notices/notices.htm

listed therein. If the verification is not filed with the initial application, any later-filed verified statement must allege that the applicant had a *bona fide* intention to use the mark in commerce as of the filing date of the application. See Trademark Rule 2.34(a)(2)(i).

Applicant has now met all the requirements for a Section 1(b) filing basis, including the submission of a verified statement that she had a *bona fide* intention to use the mark in commerce as of the filing date of the application. Inasmuch as there is no evidence in the record to the contrary, applicant can maintain her original filing date, i.e., February 20, 2001. Based on the foregoing, applicant's motion to amend the filing basis of her involved application to Section 1(b) is hereby granted. However, amending the filing basis of the involved application to Section 1(b) does not protect the application from a fraud claim. See *Grand Canyon West Ranch LLC v. Hualapai Tribe*, 78 USPQ2d 1696 (TTAB 2006).

Because the involved application is now an intent-to-use application, opposer's nonuse claim is dismissed as moot.

We turn next to opposer's motion for summary judgment on the fraud claim. In support of such motion, opposer contends that applicant made a willful, false and material representation of fact in her involved application by

4

asserting that she was using her mark in commerce and had used her mark in commerce since March 20, 1996. Opposer contends applicant's interrogatory responses establish the lack of any genuine issue regarding applicant's failure to use her mark in commerce. Responses upon which opposer relies in support of its motion include the following:

1) Applicant's statements that she "has not engaged in commerce" and that the involved mark "has never been used in commerce" (responses to interrogatory nos. 1, 3, 6, and 7);

2) Applicant's statement that the involved mark "was registered as a Fictitious Business Name Statement in March 1996 to reserve the name and notice others that I intended to do business under that name in the future" (responses to interrogatory nos. 1-3);[5]

3) Applicant's statements that she "has no invoices, documents, or writings that would establish 'use' in commerce," that she "has not had any income," and that she "has not done any marketing" (responses to interrogatory nos. 4, 6 and 7); and

4) Applicant's statements that, in 1996, she had a "one time creation" of "about 25 sample products" which were

---

[5] However, the only fictitious business name registration of record herein is for STAACHI'S EXCLUSIVES, which applicant recorded with the Contra Costa County (California) Clerk on March 20, 1996 and which opposer submitted as an exhibit in support of its motion for summary judgment. Whether or not applicant used in commerce the mark STAACHI'S EXCLUSIVES is not at issue in this proceeding.

5

"[g]iven away free of charge" and that she has not used the mark from "[a]pproximately April 1996 to present." (responses to interrogatory nos. 2 and 5).

In addition, applicant stated, as part of her objections to every one of opposer's interrogatories, that she "has not engaged in commerce, but has only attempted to reserve the name and sought a trademark to protect the utilization of the mark when and if her business is open." Applicant's responses to interrogatory nos. 1-36.

Opposer's evidentiary support for its motion includes its first set of interrogatories and first set of requests for admissions and applicant's responses thereto.  Based on the foregoing, opposer contends that there is no genuine issue of material fact that applicant willfully made a false, material statement that she was using the mark in connection with the services recited in her involved application and committed fraud on the USPTO during the prosecution of her application.  Therefore, opposer asks that summary judgment be entered against applicant on that ground.

In response, applicant, who is representing herself, contends as follows:

> [D]uring the Interrogatories phase, the question
> was asked if I the applicant had used the mark in
> commerce.  The answer was mistakenly filed as I
> had not used my mark in commerce.  I would like to
> point out, that there was confusion with question.

> The mark has been in use since March of [19]96
> [a]nd is currently in use as of Sept. 27, 2006.

Applicant, however, did not identify, or provide evidence of, any specific activities that she claims constitute use of the mark in commerce.[6]

Summary judgment is an appropriate method of disposing of a case in which there are no genuine issues of material fact in dispute, thus leaving the case to be resolved as a matter of law. See Fed. R. Civ. P. 56(c). A dispute as to a material fact is genuine only if a reasonable fact finder viewing the entire record could resolve the dispute in favor of the nonmoving party. See *Olde Tyme Foods Inc. v. Roundy's Inc.,* 961 F.2d 200, 22 USPQ2d 1542, 1544 (Fed. Cir. 1992). In deciding a motion for summary judgment, the Board must view the evidence in the light most favorable to the nonmovant, and must draw all reasonable inferences from underlying facts in favor of the nonmovant. *Id.*

A party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact, and that it is entitled to summary judgment as a matter of law. See *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *Sweats Fashions Inc. v. Pannill Knitting Co.*

---

[6] Indeed, applicant's only equivocation with regard to her statements that she is "in the formation stage of her business" and "has not engaged in commerce" were her denials in response to opposer's requests to admit that she has not used the mark in commerce.

*Inc.,* 833 F.2d 1560, 4 USPQ2d 1793 (Fed. Cir. 1987). When the moving party's motion is supported by evidence sufficient to indicate that there is no genuine issue of material fact, and that the moving party is entitled to judgment, the burden shifts to the nonmoving party to demonstrate the existence of specific genuinely disputed facts that must be resolved at trial. The nonmoving party may not rest on the mere allegations of its pleadings and arguments in response to the motion, but must designate specific portions of the record or produce additional evidence showing the existence of a genuine issue of material fact for trial. In general, to establish the existence of disputed facts requiring trial, the nonmoving party "must point to an evidentiary conflict created on the record at least by a counterstatement of facts set forth in detail in an affidavit by a knowledgeable affiant." *Octocom Systems Inc. v. Houston Computer Services Inc*., 918 F.2d 937, 16 USPQ2d 1783, 1786 (Fed. Cir. 1990), *citing Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.,* 731 F.2d 831, 221 USPQ 561, 564 (Fed. Cir. 1984).

Based on the record now before us, and for the reasons discussed below, we conclude that opposer is entitled to entry of summary judgment on the fraud claim as a matter of law because opposer has made a *prima facie* showing that there are no genuine issues of material fact remaining for trial with regard to that claim, which showing applicant has failed to rebut.

Trademark Act Section 45, 15 U.S.C. Section 1127, states in relevant part as follows:

> [A] mark shall be deemed to be in use in commerce ... on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services.

Examples of use of a service in commerce include when: (1) the recited services are rendered across state lines; and (2) customers travel across state lines in response to advertising for the recited services. See TMEP Section 1301.03(b) (4th ed. rev. 2004). Use of the mark in connection with promotional, advertising or other activities undertaken prior to the actual rendering of the recited services does not constitute actual "use in commerce" of identified services sufficient to support the filing of a use-based application. See *In re Port Authority of New York*, 3 USPQ2d 1453 (TTAB 1987); *In re Cedar Point, Inc.*, 220 USPQ 533 (TTAB 1983).

Fraud in procuring a trademark registration occurs when an applicant for registration knowingly makes false, material representations of fact in connection with an application to register. See *Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46, 1 USPQ2d 1483 (Fed. Cir. 1986). A party making a fraud claim is under a heavy burden because fraud must be proved by clear and convincing evidence,

leaving nothing to speculation, conjecture, or surmise.  Any doubt must be resolved against the party making the claim. See *Smith International, Inc. v. Olin Corporation*, 209 USPQ 1033 (TTAB 1981).

Statements regarding the use of the mark on the identified goods and/or services are certainly material to issuance of a registration.  See *Hachette Fillipacchi Presse v. Elle Belle, LLC*, ___ USPQ2d ___ (TTAB, Cancellation No. 92042991, April 9, 2007) (fraud found based on applicant's allegation of use of its mark for a wide variety of clothing items for men, women and children when mark had not been used for any identified items for men or children and only for a limited number of items for women); *Hurley International LLC v. Volta,* 82 USPQ2d 1339 (TTAB 2007) (fraud found based on applicants' allegation of use of their mark for various entertainment services and production services, when mark had not been used anywhere in the world for some of the services and had not been used in commerce with or in the United States for other services); *Standard Knitting, Ltd. v. Toyota Jidosha Kabushiki Kaisha,* 77 USPQ2d 1917 (TTAB 2006) (counterclaim petition for cancellation of petitioner's pleaded registrations granted when fraud found based on misrepresentation regarding use of the mark on most of the goods identified in the filed applications); *First International Services Corp. v. Chuckles Inc.,* 5 USPQ2d 1628 (TTAB 1988) (fraud found in applicant's filing of

application with verified statement that the mark was in use on a range of personal care products when applicant knew it was in use only on shampoo and hair setting lotion).

This case is similar to *Medinol Ltd. v. Neuro Vasx, Inc.,* 67 USPQ2d 1205 (TTAB 2003). In *Medinol,* a trademark application was filed, the mark was published, a statement of use was submitted, and a registration issued for "medical devices, namely, neurological stents and catheters." In response to a petition for cancellation, registrant admitted in its answer that the mark was not used on stents. The Board stated as follows:

> The fraud alleged by petitioner is that respondent knowingly made a material representation to the USPTO in order to obtain registration of its trademark for the identified goods. There is no question that the statement of use would not have been accepted nor would registration have issued but for respondent's misrepresentation, since the USPTO will not issue a registration covering goods upon which the mark has not been used. (cites omitted).

*Id.* at 1208.

In the case at hand, there is no dispute and no genuine issue of material fact that applicant filed an application based on use in commerce and signed a declaration attesting to the truth of all the statements in the application when she knew or should have known that she had not used the mark in connection with the recited services, i.e., "retail store services featuring, bath products, gift products, [and]

candy products."[7]  There is no question that applicant's misrepresentation resulted in the involved application being approved for publication as a use-based application.

From the original filing of her application until the filing of her motion to amend the filing basis of the application to Trademark Act Section 1(b), applicant asserted a claim of use under Trademark Act Section 1(a). However, in her responses to opposer's discovery requests which opposer submitted as evidence in support of its motion for summary judgment, applicant states that the STAACHI'S CO. 1996 mark "has never been used in commerce." Applicant's responses to interrogatory nos. 1-3. Applicant further states that she not had any income and has not done any marketing. Applicant's responses to interrogatory nos. 6-7.

Thus, as in *Medinol,* a material representation of fact with regard to use of the mark on particular services was made by the mark's owner and that statement was relied upon by the USPTO in determining applicant's rights to the

---

[7] An applicant may not claim a Section 1(a) filing basis unless the mark is in use in commerce on or in connection with all goods and/or services covered by the Section 1(a) basis as of the application filing date. See Trademark Rule 2.34(a)(1)(i). *Cf. E.I. du Pont de Nemours & Co. v. Sunlyra International, Inc.*, 35 USPQ2d 1787, 1791 (TTAB 1995). The involved application includes the following statement: "Applicant is using or is using through a related company the mark in commerce on or in connection with the ... identified goods/services." Also, applicant signed the oath at the conclusion of the application under penalty of "fine or imprisonment, or both ... that ... willful false statements may jeopardize the validity of the application or any resulting registration...."

registration. In Board *inter partes* proceedings, "proof of specific intent is not required, rather, fraud occurs when an applicant or registrant makes a false material representation that the applicant or registrant knew or should have known was false." *General Car and Truck Leasing Systems Inc. v. General Rent-A-Car Inc.,* 17 USPQ2d 1398, 1400-01 (S.D. Fla. 1990), aff'g *General Rent-A-Car Inc. v. General Leaseways, Inc.,* Canc. No. 14,870 (TTAB May 2, 1988) (intent of the signatories not material to question of fraud).

As the Board determined in *Medinol*, "the appropriate inquiry is ... not into the registrant's subjective intent, but rather into the objective manifestations of that intent." *Medinol Ltd. v. Neuro Vasx, Inc., supra* at 1209. In *Medinol*, the Board concluded that the facts justified a finding of fraud:

> The undisputed facts in this case clearly establish that respondent knew or should have known at the time it submitted its statement of use that the mark was not in use on all of the goods. Neither the identification of goods nor the statement of use itself was lengthy, highly technical, or otherwise confusing, and the President/CEO who signed the document was clearly in a position to know (or to inquire) as to the truth of the statements therein.

*Id.* at 1209-1210.

As previously indicated, applicant stated repeatedly in her responses to opposer's interrogatories that she has not engaged in commerce and that her business is in the

13

formation stage and also stated that she has not used the mark since approximately April 1996. Although she asserts in response to the motion for summary judgment that she has used the mark in commerce since March 1996 and has denied certain requests for admission regarding nonuse of the mark,[8] she has provided no details that are sufficient to raise a genuine issue of material fact with regard to the fraud claim. Without further corroboration, the general statement and denials of requests for admission are not sufficient to refute applicant's earlier, more specific, and contradictory statements in response to opposer's interrogatories so as to create a genuine issue of material fact requiring resolution at trial. Applicant was certainly in a position to have personal knowledge of the facts concerning whether she had used her mark in connection with the services identified in her application prior to filing that application. Even if applicant honestly believed that her activities in connection with her involved mark warranted filing the involved application based on use in commerce under Trademark Section 1(a), there is no genuine issue that, under the circumstances, it was not reasonable

---

[8] An admission in response to a request for admission "conclusively establishe[s]" the matter that is subject of that request. Fed. R. Civ. P. 36(b). However, a denial in response to a request for admission is merely a refusal to stipulate to certain matter. See *National Semiconductor Corp. v. Ramtron Int'l Corp.*, 265 F.Supp.2d 71 (D.D.C. 2003).

for applicant to believe that her activities in 1996 constituted current use or use in commerce for the identified services at the time she signed her application. That is, applicant could not have reasonably believed that either registration of STAACHI'S EXCLUSIVES as a fictitious business name in 1996 and a one-time giveaway of twenty-five product samples bearing the involved mark in 1996 were sufficient to constitute use or use in commerce of the mark STAACHI'S CO. 1996 and design for "retail store services featuring, bath products, gift products, [and] candy products" when the involved application was filed on February 20, 2001, nearly five years after these activities. Inasmuch as applicant's material representations regarding use of the mark were false and applicant knew or should have known such representations were false, we conclude that applicant has committed fraud.

This case is distinguished from *Maids to Order of Ohio Inc. v. Maid-to-Order Inc.*, 78 USPQ2d 1899 (TTAB 2006), wherein the Board found that the defendant's limited use of its mark across state lines in connection with its recited services provided the defendant's president with a reasonable basis for her belief that the mark was being used in interstate commerce in connection with the recited services when respondent filed an application for registration, a declaration under Trademark Act Section 8,

15

15 U.S.C. Section 1058, and an application for renewal, and that such good faith belief was sufficient to negate an inference of fraud. The present case does not present a question, as in *Maids to Order,* about whether use in connection with the identified services constituted use in commerce. Rather, the instant case presents a question whether there was any use of the mark in connection with the identified services. Applicant has pointed to no use of the mark in connection with any retail store services that would have provided applicant with any basis for claiming that the mark was in use in commerce when she filed her use-based application. As noted *supra*, applicant's activities related to the formation of her business without subsequent rendering of her retail store services do not provide a basis for a claim of use of her mark in commerce for such services.[9] See *In re Port Authority of New York*, *supra.* Further, applicant's one-time use of the mark on products does not provide a basis for asserting service mark use. See TMEP Section 1301.01(a) (4th ed. 2005).

In view of the above, we find that applicant's material misrepresentations made in connection with her application were fraudulent and, therefore, the application is void *ab*

---

[9] This is not a case where the question is whether use of the mark constituted use for retail services. Applicant has not used the mark for Internet retailing, mail-order or catalogue retailing, or retailing from a fixed store location. In short, there has been no retailing whatsoever.

*initio*. Accordingly, summary judgment is entered in opposer's favor on the issue of fraud. Inasmuch as opposer did not move for summary judgment on its pleaded likelihood of confusion claim, we need not reach the issue of likelihood of confusion.

However, to prevail in this proceeding, opposer must establish not only a valid ground for denying the registration sought, as it has, but must also prove its standing. *See, e.g., Lipton Industries, Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185 (CCPA 1982). While opposer's allegation that it is the owner of previously used and registered marks would, if proven, suffice to establish its standing, opposer has not yet submitted any evidence on this point.[10] See *id.*

Opposer is therefore allowed until thirty days from the mailing date set forth in the caption of this order in which to submit a showing that there is no genuine issue of fact as to standing, and that it is entitled to judgment on the issue of standing as a matter of law. Applicant is allowed until fifty days from the mailing date set forth in the caption of this order to file a response thereto, if

---

[10] Although opposer alleged ownership of the pleaded registrations in the amended notice of opposition, applicant stated in her answer thereto that she was without "sufficient knowledge or information on which to form a belief as to the truth" of opposer's allegation that it owns the pleaded registrations. In addition, opposer did not submit status and title copies of any of its pleaded registrations. Further, it did not ask

17

desired. If opposer's showing is sufficient to establish its entitlement to summary judgment on the issue of standing, summary judgment on standing will be entered in opposer's favor, and the opposition will be sustained. If opposer's showing is not sufficient on the issue of standing, proceedings will resume on that issue alone.

This proceeding remains otherwise suspended pending opposer's response.

---

applicant to admit that opposer owns the pleaded registrations in its requests for admission.